DISTRICT OF OREGON, ss:                                  AFFIDAVIT OF GRANT TAYLOR

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Grant Taylor, being first duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.     I am a Special Agent with the Federal Bureau of Investigation and have been employed with the FBI since June of 2021. Since becoming a Special Agent, I have received specialized training from the FBI, to include completing the 21-week New Agent Training course at the FBI Academy in Quantico, Virginia. I am currently assigned to the Seattle Field Division at the Vancouver office where I am a member of the Columbia River Organized Crime Task Force. In this capacity, I investigate, inter alia, organized crime, drug trafficking, firearms offenses, and related violations. Based upon my training and experience, I am familiar with the key role that firearms play in the commission of crimes in support of gang objectives. In my role as a Special Agent for the FBI, I have participated in many aspects of investigations, including conducting physical surveillance, managing confidential sources, interviewing witnesses, conducting controlled buys of illicit narcotics, and executing search warrants. I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for, violations enumerated in Title 18, United States Code, Section 2516.

2.     I submit this affidavit in support of a criminal complaint and arrest warrant for Dylan James HARDY (date of birth XX/XX/2000), for violations of Title 18, U.S.C. § 933(a)(1), Trafficking in Firearms; Title 18, U.S.C. § 922(g), Felon in Possession of a Firearm; Title 18, U.S.C. § 922(j), Possession of a Stolen Firearm; and Title 18, U.S.C. § 922(k), Possession of a Firearm with Obliterated Serial Number. As set forth below, there is probable cause to believe, and I do believe, that HARDY committed these crimes.

**Affidavit of Grant Taylor**                                              `                                              **Page 1**

3. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause to believe that the defendant committed the crimes set forth herein, this document does not contain all of my knowledge of the larger investigation.

## Applicable Law

4. Title 18, U.S.C. § 933(a)(1) makes it unlawful to ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony.

5. Title 18, U.S.C. § 922(g)(1), makes it unlawful for anyone who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

6. Title 18, U.S.C. § 922(j) makes it unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign

commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

7.     Title 18, U.S.C. § 922(k) makes it unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

**Probable Cause Statement**

8.     In winter of 2024, the FBI received information from a Confidential Human Source (CHS-1). CHS-1 began cooperating with the government for potential sentencing consideration on state charges. CHS-1 has an extensive criminal history that includes multiple misdemeanor and felony convictions, including for: Burglary (in 2007); Unlawful Imprisonment, Assault, Interference with Reporting Domestic Violence, Residential Burglary, and Resisting Arrest in 2013; Manufacture, Delivery, and Possession with Intent to Distribute Marijuana in 2016; and a Community Custody Violation in 2019. CHS-1 has provided accurate and verified information to law enforcement in the past, and I am unaware of any information CHS-1 has provided that has been shown to be inaccurate.

/ / /


/ / /


/ / /

9. CHS-1 told agents that he had been introduced to a man named Dylan HARDY who was attempting to sell firearms. CHS-1 gave HARDY's phone number as (XXX) XXX-7283[1] (TT1). CHS-1 stated that HARDY told CHS-1 he could sell an assault rifle and a handgun to CHS-1 for $3,000.

10. Agents subpoenaed subscriber and toll records from T-Mobile for TT1. The subscriber of TT1 was listed as Dylan HARDY, with a residence in Vancouver, Washington 98684. According to a search of Washington State Department of Licensing (DOL) information, HARDY's listed address on his driver's license is the same Vancouver, Washington address. Criminal history records for HARDY show convictions for seven felonies, including Attempting to Elude Police Vehicle, two counts of Taking Vehicle Without Permission in the Second Degree, two counts of Possession of Stolen Property in the Second Degree, and two counts of Identity Theft in the Second Degree. For these crimes, HARDY was sentenced to 17 months in prison on June 30, 2023. HARDY is listed as a suspected Sureño gang member by Washington DOC.

11. In February of 2024, agents received notification that HARDY had been the subject of a Vancouver Police Department (VPD) investigation for possession of stolen property. On February 5, 2024, investigators responded to a report of a burglary at Extra Space Storage Facility in Vancouver, Washington. An open-view access point revealed items from Unit 1160 were in Unit 1146. Surveillance photos depicted a man matching HARDY's description moving items to and from Unit 1146. Surveillance photos also showed HARDY driving a black Mercedes sedan. Investigators obtained a search warrant for Unit 1146 from a Clark County

---

[1] I have redacted or excluded personally identifying information throughout this affidavit, such as the residence address, marina address, storage unit addresses, license plate information, and birth dates, because this affidavit may become part of the public record at some point. I know this information, but have either simply listed "residence," "storage unit," "Marina," or replaced the relevant information that I know with "XXXX."

**Affidavit of Grant Taylor**                              `                                **Page 4**

Superior Court judge. Upon executing the warrant, investigators determined that several of the items recovered from the search of the storage unit had belonged to three construction businesses which had been the victims of a burglary in December of 2023.

12. On February 18, 2024, VPD officers identified a black Mercedes sedan with Oregon license plate XXXXXXXX parked in the driveway of HARDY's listed DOL address in Vancouver, Washington. Neighbors described a white male approximately six feet tall with a goatee and a mustache had been driving the vehicle. This generally matched HARDY's description.

13. On February 28, 2024, investigators established surveillance on the black Mercedes. Investigators confirmed that HARDY was the driver of the black Mercedes and followed it to a storage unit in Vancouver, Washington. HARDY was seen exiting the Mercedes and then entering the storage unit building where interior storage units are. Investigators secured the Mercedes and contained the building HARDY was observed entering. Investigators then began a clearance of the building. During the clearance, items were observed outside of Unit 314. HARDY was called out of Unit 314 taken into custody. The Mercedes that HARDY had been driving was secured and towed to Vancouver East Precinct.

14. On February 29, 2024, a search warrant issued by a judge of the Clark County Superior Court was served on the black Mercedes at Vancouver East Precinct. During the search of the Mercedes, the following evidence items were found:

- One pair of Vortex Viper 15x56 binoculars;
- One Remington 700 rifle chambered in 6.5 Creedmoor, serial number RR33275k;
- One Leopold VX3 rifle telescope, serial number 144341AD;
- One Gemtech "Tracker" rifle suppressor, serial number SA-300193.

**Affidavit of Grant Taylor**　　　　　　　　　　　　　　`　　　　　　　　　　　　　　**Page 5**

HARDY, who had been charged with several counts of possession of stolen property, made bail and was released from custody.

15. In early March of 2024, in the presence of agents, CHS-1 conducted a recorded phone call with HARDY by calling TT1. During the phone call, HARDY confirmed he was selling an assault rifle and a .45 caliber handgun. HARDY stated that he wanted $1,750 for each weapon. HARDY also stated that he had more firearms and indicated that he wanted to sell more to CHS-1, though HARDY would not provide details on what else he had during the phone call.

16. Based on the above information, a Pen Register, Trap and Trace, and Geolocation Search Warrant was issued in the Western District of Washington for TT1. During the time that this warrant was active, Vancouver Police Department (VPD) and Portland Police Bureau (PPB) located HARDY in a stolen vehicle and attempted to arrest him. HARDY attempted to elude, resulting in a car chase into Portland. HARDY's vehicle was finally stopped, and HARDY was taken into custody by PPB.

17. In mid-April, HARDY posted bail and was released from custody. CHS1 texted HARDY on TT1 to ask if HARDY was still selling any firearms. HARDY responded on a new number, (XXX) XXX-7285 (TT2). HARDY told CHS1 that HARDY still had guns to sell. HARDY told CHS1 that HARDY could sell CHS1 an AR-15 style rifle for $1,100 U.S. Currency.

18. In early May, agents conducted a controlled firearm purchase from HARDY at a location in Portland, Oregon, using CHS1. Agents met with CHS1 prior to the buy and provided audio recording devices. Agents searched CHS1 and CHS1's vehicle for contraband, finding nothing. CHS1 was provided $1,100 for the purchase of the above-mentioned AR-15 style rifle. Agents maintained surveillance on CHS1 to the buy location. CHS1 met with HARDY and

purchased the AR-15 style rifle for $1,000. HARDY arrived at the buy location in the passenger seat of a black 1998 Mercedes with license plate XXXXXXX (Vehicle 1, or V-1). V-1 was driven by a blonde female that appeared to be HARDY's girlfriend. HARDY exited the passenger seat and retrieved a bulky item from the back passenger seat. HARDY passed this item to CHS1 through CHS1's driver window. CHS1 paid HARDY $1,000 for the rifle. At the conclusion of the buy, surveillance was lost on CHS1 when CHS1 departed for the staging location. Agents found CHS1 at the staging location and retrieved an AR-15 style rifle and a Vortex optic from CHS1. Agents also retrieved the extra $100 that CHS1 did not end up paying to HARDY.

19. Upon closer examination, agents found manufacturer markings stamped on the magazine well of the rifle. The markings read "Stag Arms, New Britain CT, USA, SN:S034582." Based on my open-source research, I know that Stag Arms is an AR-15 manufacturer currently based in Wyoming. I further know that prior to 2018, Stag Arms manufactured its rifles in New Britain, Connecticut. This firearm would therefore have had to travel in interstate commerce in order to be purchased in Portland, Oregon.

20. Agents then queried the serial number of the rifle in law enforcement databases. Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) records showed that it was purchased by a woman in 2020. VPD records listed it as stolen as of January 5, 2024.

21. Shortly after the controlled purchase of the Stag Arms AR-15, HARDY again reached out to CHS1. HARDY sent CHS1 a picture of what appeared to be a short barrel AR-15 rifle with an attached suppressor. HARDY told CHS1 it was a ghost gun. HARDY also sent a picture of a Glock 22 Gen 4 pistol with a silver slide. HARDY told CHS1 that the Glock also had a switch on it. Based on my training and experience, I know a "switch" is a device that allows a semi-automatic pistol to fire fully automatically. I also know that a "ghost gun" is a firearm that

was either produced without a serial number or that has had its serial number removed. CHS1 and HARDY agreed on a price of $2,300 for both firearms.

22.  Agents conducted a second controlled firearm purchase from HARDY at another location in Portland, Oregon, using CHS1. Prior to the buy, Agents located V-1 parked in the parking lot at a marina in Portland, Oregon (Marina). Agents set up surveillance in the area of V-1. Agents met with CHS1 prior to the buy and provided audio recording devices. Agents searched CHS1 and CHS1's vehicle for contraband, finding nothing. CHS1 was provided $2,300 for the purchase of the above-mentioned short barrel AR-15 style rifle with suppressor and Glock 22 pistol. Agents maintained surveillance on CHS1 to the buy location.

23.  Agents in the area of V-1 observed HARDY enter the driver's seat and a blonde female enter the passenger seat of V-1 and depart the Marina. Agents followed V-1 to where it stopped next to a blue Hyundai sedan. Agents observed an occupant of the blue Hyundai hand a rifle case through the window to HARDY. HARDY then departed and drove to the meeting with CHS1. HARDY met with CHS1 and gave CHS1 what appeared to be the same rifle case he had just picked up from the blue Hyundai. CHS1 paid HARDY the $2,300. HARDY also showed CHS1 two additional AR15s that were in the back seat of V-1. HARDY told CHS1 that HARDY wanted $2,500 for both of the rifles. CHS1 declined the additional rifles and departed the location.

24.  Agents maintained surveillance on CHS1 to the staging location. At the staging location, agents retrieved the rifle case from CHS1. Inside the case were the short barrel AR-15 with suppressor, the Glock 22 with a holster, two 30 round rifle magazines, an extra AR-15 buttstock, and an extra AR-15 grip. One of the rifle magazines contained a single .223 caliber bullet, and the Glock 22 had a magazine that was filled with 15 .40 caliber bullets.

25. The magazine well of the AR-15, which is normally where the manufacturer stamp is placed, appeared to have been filed down, and no serial number was found on the rifle. The rifle did, however, have "B.F.I., Windham, ME, USA" engraved above the trigger. Based on open-source research, I know that BFI stands for Bushmaster Firearms International. BFI had a manufacturing plant in Windham, Maine, until 2011. This firearm would therefore have had to travel in interstate commerce in order to be purchased in Portland, Oregon.

26. The Glock 22 had "Glock 22 Gen 4, Austria, .40" stamped on the left side of the slide. The Glock symbol is also faintly stamped on the right side of the slide, and there appears to have been filing done on the right side of the slide where the serial number is typically found. Based on my training and experience, I know that Glock is an Austrian firearms company with manufacturing facilities both in the United States and in Austria. Glock pistols manufactured in the United States have "USA" stamped on the slide, while Glock pistols manufactured in Austria have "Austria" stamped on the slide. Since this Glock 22 has "Austria" stamped on the slide, I know that this pistol was manufactured at Glock's manufacturing facility in Austria, and therefore would have had to travel in foreign and interstate commerce to be sold in Portland, Oregon. The Glock did not, however, contain a switch.

27. The grip of the Glock 22 also has "Glock" stamped on it. Based on my training and experience, I know that Glock pistols contain a plate on the bottom of the lower receiver in front of the trigger guard that contains a serial number. The outline of the plate appears on the Glock 22, but the plate with the serial number is not present. Therefore, I believe that the serial numbers of the Glock 22 were purposefully tampered with in order to make the Glock a "ghost gun."

28.     Following the second controlled purchase, HARDY again reached out to CHS1 about further sales of firearms. HARDY sent pictures of two more AR-15s that he offered to sell to CHS1.

## Conclusion

29.     Based on the foregoing, I have probable cause to believe, and I do believe, that Dylan James HARDY possessed and trafficked a stolen firearm as well as firearms with the manufacturer's serial number obliterated. I believe HARDY has violated Title 18, U.S.C. § 922(g)(1), Felon in Possession of a Firearm; Title 18, U.S.C. § 922(j), Possession of a Stolen Firearm; Title 18, U.S.C. § 922(k), Possession of a Firearm with Obliterated Serial Number; and 18 U.S.C. § 933(a)(1), Trafficking in Firearms. I therefore request that the Court issue a criminal complaint and arrest warrant for Dylan James HARDY.

30.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney ("AUSA") Nathan Bender, and AUSA Bender advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/ / /


/ / /


/ / /


/ / /

**Request for Sealing**

31.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information is relevant to an ongoing investigation, and any disclosure of the information at this time may cause flight from prosecution, cause destruction of or tampering with evidence, or otherwise seriously jeopardize an investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*/s/ by telephone*
GRANT TAYLOR
Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 10:05 am on May 23, 2024.

_____
HONORABLE JEFFREY ARMISTEAD
United Sates Magistrate Judge